## PUHI *vs.* MAHULUA.

### APPEAL FROM THE CHANCELLOR.

### OCTOBER TERM, 1886.

### JUDD, C. J.; MCCULLY and PRESTON, JJ.

A bill to set aside a deed, on the ground of fraud and undue influence practiced upon the grantor when in a condition of mental unsoundness, set aside; the evidence, though conflicting, failing to sustain the allegations of the bill.

Decree affirmed.

### OPINION OF THE COURT, BY MCCULLY, J.

WE take the opinion of the Chief Justice, who heard this case, and from whose decree this appeal is made, for the opinion of the Court, hereby affirming the said decree, and refer, for the statement of the case and the analysis and *resume* of the evidence, to that opinion.

We have carefully examined the evidence, as taken by the Clerk, and consider it in connection with the argument made before us.

In the conflict between the plaintiff's and the defendant's witnesses, we prefer to give credit to the latter.

Their testimony is characterized by statements of circumstances which are particular and probable, consistent and unlikely to be invented.

The conveyance to this defendant, for a small or a nominal consideration, was well supported and reasonable. The allegation of undue influence is without proof.

The decree is affirmed.

*A. Rosa*, for plaintiff.

*W. A. Kinney*, for defendant.

Honolulu, October 23, 1886.

### OPINION OF THE CHANCELLOR, APPEALED FROM.

This is a bill in Equity to set aside a deed made by one Kaanaana to the defendant, on the 13th January, 1886, on the ground

that the same was procured when Kaanaana was of unsound mind, and by fraud and undue influence.

It is clearly established that Kaanaana had a stroke of apoplexy on the 26th July, 1885, which left him paralyzed in one-half of his body, and deprived him of the power of articulate speech; that the deed was made while he was still in this condition; and that he never recovered, but died on the 3d March, 1886.

The witnesses for the plaintiff, to wit, the plaintiff, Kamahalaau, Kekilia, Sarah, Naai and Haaheo, say that during all the time of his illness Kaanaana was speechless, unable to indicate his wants, or attend to his person, or feed himself, and was in fact "a body without a soul." Rev. J. Waiamau, who saw him on the day of his attack, and once, a month later, says he was insensible and could not speak on the first occasion, and on the second made no response to witness' questions about his health.

The witnesses for defendant, A. Kaaliko, who drew the deed, W. L. Holokahiki, who took the acknowledgment, Aquai, Kealo, Naliielua, Makia, and the defendant say that Kaanaana, though speechless and paralyzed, was able to express his wishes by signs and by sounds bearing some resemblance to speech and was fully capable of making the deed.

There was no proof of undue influence exercised by defendant offered by plaintiff, nor of any fraud or deception. The unequivocal position is taken by plaintiff that the grantor's brain was so affected by his disease that it had ceased to act and he had no mind left and so the deed was a gross fraud.

The defendant shows in detail many acts of the grantor which would indicate that he was possessed of reason and intelligence. These are denied by plaintiff's witnesses. The contradiction here is flat, and I must ascertain where the real truth lies.

The interest of plaintiff, who claims to be a remote relative of Kaanaana, as well as of Namahalaau and Haaheo, who also are said to bear some relationship to him, is manifestly strong against the deed. On the other hand, the interest to sustain it by defendant and her paramour, Kealo, and defendant's brother, Makia, and his wife, Naliielua, is also strong, and the interest of the lawyer who took Kaanaana's instructions, prepared the deed, and attended to its execution, as well as that of the acknowledging

officer, is also manifest. Where the testimony on one side is so utterly opposed to that on the other, I am obliged to analyze it somewhat. The defendant's witnesses say that Kaanaana heard the news recited, that his house at Waianae had been broken open, and he immediately indicated by gestures and sounds to defendant and others in attendance on him, that he had some money on the plate of the house over the door of the inner room, and that a messenger went after it and brought it to him, and he give it to defendant to be used for tea and food for a small boy that was being brought up in the house; also that in a similar way he sent to Waianae for some tobacco which he wished, and that he was accustomed during all his illness to smoke a pipe when filled and lighted and handed to him.

The strange statement is made by Mr. Waiamau that he even smoked a few whiffs of a pipe put in his mouth a few hours after the stroke of apoplexy. The witnesses also say that Kaanaana communicated to Kealo and others that he wished the fence around his premises to be repaired, and directed how it should be done; also that he would point to the water bottle when he was thirsty, and would drink when it was handed to him; also that he sent for tea on one occasion.

In fact, if the witnesses for the defense are to be believed, he showed during his illness intelligence and mental capacity.

The circumstances of the execution of the deed in question are fully described. On several occasions Kaanaana urged the defendant, who was his deceased wife's younger sister, and who had lived in his family for over sixteen years, to procure some one to make a paper disposing of his property, and it was finally accomplished by A. Kaoliko above referred to. The force of the testimony of Naai, one of plaintiff's witnesses, is much shaken by the fact that she went with defendant, her husband Kaaua accompanying them, to Mr. Dimond to procure a loan of $500 on the land in question, about the time of Kaanaana's death.

Mr. Dimond says he relied upon the representation made by Naai and Kaaua that though Kaanaana was paralyzed and speechless, he could express his wishes intelligently. It is impossible to reconcile the complicity of these witnesses, in procuring the loan on the strength of the deed in question, with their testimony that Kaanaana had no mental capacity when he signed it.

On a review of all the evidence I am of the opinion that the proofs on the part of the plaintiff have failed, and accordingly dismiss the bill.